**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA f/u/b/o** \* | |
| **GENERAL MECHANICAL SERVICES, LLC** | |
| **1007 Skidmore Drive** \* | |
| **Annapolis, MD 21012** | |
| \* | |
| | |
| **Plaintiff** \* | |
| | |
| **v.** \* | **Case No.: 1:15-cv-01252** |
| | |
| **LIBERTY MUTUAL INSURANCE COMPANY** \* | |
| **175 Berkeley Street** | |
| **Boston, MA 02116** \* | |
| | |
| **SERVE:     Corporation Service Company** \* | |
| **1090 Vermont Ave., NW, Suite 430** | |
| **Washington, DC 20005** \* | |
| | |
| **AND** \* | |
| | |
| **Corporation Service Company** \* | |
| **84 State St.** | |
| **Boston, MA 02109** \* | |
| | |
| **Defendant** | |

_____

**COMPLAINT**

Plaintiff, General Mechanical Services, LLC ("GMS"), by its undersigned attorneys, sets

forth the following cause of action against Defendant, Liberty Mutual Insurance Company

("Liberty Mutual"), and in support thereof states as follows:

**THE PARTIES**

1.    GMS is a corporation organized and existing under the laws of the State of Maryland with its principal place of business in Annapolis, Maryland.

2.    Upon information and belief, Defendant, Liberty Mutual, is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts. Liberty Mutual is a commercial surety company that issues, among other things, payment and performance bonds on private and public construction projects in the District of Columbia.

## JURISDICTION

3.    This Court has jurisdiction pursuant to the provisions of the Federal Miller Act, 40 U.S.C. § 3133, as the bond upon which this Complaint is based was issued pursuant to the provisions of the Federal Miller Act, 40 U.S.C. § 3131.

4.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse of citizenship.

## VENUE

5.    Venue is appropriate pursuant to the provisions of the Federal Miller Act, 40 U.S.C. § 3133, as the construction project which is the subject of this Complaint was located in Washington, D.C.

## BACKGROUND FACTS

6.    Upon information and belief, the United States Department of Veteran Affairs (the "Owner" or "VA") executed a contract (the "Prime Contract") with Homeland Security Construction Company ("Homeland" or "HSCC") for a project referred to as the Veterans Administration Medical Center – Ward 4C Patient Ward Expansion Project (the "Project").

7.     The Project involved renovation of Ward 4C, which is a section of the fourth floor at the Veterans Administration Medical Center located at 50 Irving Street NW, Washington, D.C. 20422. Ward 4C consists of patient rooms, corridors, office space and interior staff and lounge/waiting areas.

8.     As a condition of the Prime Contract, and to secure the faithful performance of the same, Homeland, as principal, executed and delivered to the VA a labor and material payment bond, no. 017-034-488, (the "Bond") with Liberty Mutual as surety. (Exhibit 1).

9.     The Prime Contractor subcontracted GMS as the heating and mechanical subcontractor on the Project to provide certain plumbing and heating, ventilation and air conditioning work.  (Exh. 2).

10.   GMS's scope of work included funishing all necessary labor, materials, supplies, equipment and supervision for the plumbing work and mechanical work, including, but not limited to, the meters and gages, valves, water distribution, sanitary sewage, storm drainage, fixtures, vacuum systems, gas systems, chemical waste systems, HVAC and steam generation, motor, vibration and noise control for HVAC and steam and piping, insulation, piping, pumps, ducts, casings, fans, air outlets and inlets, water chillers, air handling units, heating and cooling units and demolition work associated with the same.

11.   GMS was required to perform addition and extra-contractual work that resulted in numbers proposed change orders, as well as required to work out of sequence and in a fashion not consistent with industry standard or the project plans and schedule.  GMS issued change order proposals associated with the same.   These change order proposals are as follows:

| GMS Change Order | Version | Description | GMS Value |
|---|---|---|---|

| 3 | | Remove/Replace Ceiling and Cleanup | 24,455.00 |
|---|---|---|---|
| 4 | | Remove/Replace Ceiling and Cleanup | 3,242.00 |
| 5 | | Remove/Replace Ceiling and Cleanup | 3,032.00 |
| 13 | R1 | C0-004 GMS PCO 15, Complete POD #1 piping Mods | 56,410.00 |
| 23 | | Plumbing Obstruction Survey | 9,048.86 |
| 29 | | ERU Blocking Access Door | 3,379.00 |
| 31 | R3 | Glycol Water Make Up | 5,737.30 |
| 40 | R3 | Modifications to Chilled Water Piping | $27,281.11 |
| 43 | | H&C Water Valve Relocations | 8,061.18 |
| 42 | R3 | Added Medical Gas Purging | $24,050.82 |
| 57 | | VA not allowing for connections | 4,756.24 |
| 62 | | Condensate Drain Tie In | 5168.07 |
| 68 | | Added core drilling issues | 46,225.59 |

| | | | |
|---|---|---|---|
| 82 | | Delete Spigot at 4CM exterior/Roof | 1,888.00 |
| 83 | | Steam Trap at corridor 200 & 153 | 5765.86 |

12.   The forgoing change order proposals have not been paid in full.   Conditioned on payment, the forgoing was resolved with the VA for $185,173.  The VA has failed to pay the amount as agreed, however, and, as such, the forgoing amount, less a credit of $87,137 remains due GMS on the forgoing change order proposals.

13.   In addition, the following change order proposals remain due and unpaid:

| GMS Change Order | Version | Description | Value |
|---|---|---|---|
| 53 | | Extension of Heating Water Piping in 1st Floor H&C connections | 9,658.66 |
| 62 | R3 | FCU Drain Line installation | 5,168.07 |
| 74 | R2 | Pipe sleevs due to structural changes | 1,718.54 |
| 80 | | Pipe mods for concrete mods required | 2,065.04 |
| 83 | | Install of Steam Trap NOT SHOWN at 200 & 153B | 5,765.86 |
| 38 | r1 | Add'l costs to reconnect AHU units for Added Steel Work | 8,969.00 |

14.    GMS entered in the subcontract on January 4, 20111. The planned project schedule had a projected completion date of September 28, 2011 with an original contract period for GMS of 267 days. The property was not vacated and was not properly managed to allow the project to be executed as planned in the contract documents; this, coupled with a delay in obtaining responses to requests for information (RFIs), GMS was forced to remain working on this project until August 9, 2014 or 1,046 days after the anticipated September 28, 2011 completion date.

15.    GMS was denied unrestricted access to the entire 4C/3C space as planned. The fourth floor was not turned over for GMS to begin work until July of 2011 and obstructions continued until September of 2011.   The Chapel on 3C of the project was not turned over to GMS until April of 2012 - over one year after GMS was originally projected to commence its work on the Project. Additionally, issues associated with the 4th floor addition prevented this work from commencing until January 2013.

16.    Core drilling attempts, which were critical to the installation of the mechanical and plumbing systems, were slated to commence on January 4, 2011 and end January 11, 2011, however, GMS was denied access. Then, once some access was provided, subsequent attempts to complete the core drilling revealed numerous rebar obstructions that were differing site conditions and resulted in the generation of numerous RFI's. Many of these rebar RFI's, critical to project execution, remained unresolved for more than 60 days, creating project delays. As a result, core drilling did not begin until August 6, 2011 and it remained in progress until 2012.

17.    As RFI's were slowly answered, a number of change order requests (COR's) remained unanswered for prolonged periods of time, further exacerbating the delay. GMS was forced to install mechanical and plumbing systems in a very inefficient piecemeal manner.

3

Making matters worse, the work areas were released on a room-by-room basis instead of the entire floor as outlined in the contract documents.

18.    As small areas of work were released, the cycle started all over again. First RFI's were written, followed by late responses, sometimes over a year after the RFI's were submitted. The RFI responses then caused a large number of COR's. These were either ignored or were not funded or responded to until so late that it caused months of inactivity on the affected activity.

19.    As a result of these foregoing impacts, GMS incurred significant additional costs to perform the required work on the Project.

20.    GMS submitted a claim to HSCC September 2014 for additional costs associated with the forgoing.   The costs/damages set forth in GMS's Claim included, but were not limited to, Loss of Labor Productivity; Labor Escalation Costs; Additional Badging and Testing Costs; Additional Direct Labor Costs; Additional Tax Expense; Additional Material Escalation Costs Extended Bond Costs; Extended Equipment Costs; Extended Field Overhead Costs; Extended Home Office Overhead Costs; Proposal Preparation Costs; Additional Subcontractor Costs; Additional Profit; Additional Bond Costs, all of which total $1,796,144.26.   This amount does not include the additional but unpaid work outlined above, a portion of which was originally included in the GMS Claim.

21.    Upon information and belief, HSCC passed-through its claim to the VA.

22.    GMS has substantially completed performance of its work on the Project, but has not been paid costs set forth above.

23.    All conditions precedent required to bring this action have been fulfilled by GMS, including but not limited to commencing the action no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action.

## COUNT I

### (Action on Payment Bond)

24.   GMS adopts and incorporates by reference herein its averments contained in Paragraphs One (1) through Seventeen (23) as stated above.

25.   Homeland, as principal, and Liberty Mutual, as surety, executed and delivered the Bond to the VA for the protection of all persons having a direct contractual relationship with Homeland, including GMS, for the furnishing of labor and/or materials on the Project.

26.   Under the terms of the Bond, Liberty Mutual is liable to GMS for all unpaid monies due and owing to GMS as described herein.

27.   GMS has complied with all requirements of 40 U.S.C. § 3133(b)(2) *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, General Mechanical Services, LLC, demands judgment against Defendant, Liberty Mutual Insurance Company, in an amount in excess of $1,894,194, which amount will be proven at trial, plus interest and court costs, and for such other and further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, GMS demands trial by jury in this action of all issues so triable.

Date: August  4, 2015


Respectfully submitted,




_____/s/_____
Jessica A. duHoffmann
Bar No. 47683
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21202
410.727.6464
jduhoffm@milesstockbridge.com
www.milesstockbridge.com